No. 47,791

STATE OF KANSAS, *Appellee*, v. CHESTER IRVING, *Appellant.*

(538 P. 2d 670)

Opinion filed July 17, 1975.

*James L. Pinkerton,* of James L. Pinkerton, Chartered, of Wichita, argued the cause and was on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Keith Sanborn,* district attorney, and *Robert Kennedy, Jr.,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Chester Irving was charged with aggravated robbery and possession of a pistol within five years of a felony conviction. He was convicted by a jury of the first offense and acquitted of the latter. His motion for new trial was denied, he was sentenced upon the robbery charge and now appeals.

Evidence for the prosecution revealed that shortly after 9:00 a. m. on Tuesday, March 5, 1974, the Government Employees Credit Union, located at the corner of Topeka and Central avenues in Wichita was held up and robbed by three armed black males. Defendant was not one of the three that entered the Credit Union building; he was charged as a principal in the affair on the theory he actively participated as a driver of the getaway car.

During the robbery a silent alarm at the credit union was activated which was relayed to the Wichita police department. A police radio broadcast was immediately made of the fact a robbery

was in progress at the credit union. Two police officers, detectives Burnett and Zettl, who were about four blocks from the scene, responded to the call. As they arrived at the credit union they noticed a police car at the front of the building and they also saw three men enter the nearby alley. The two detectives then drove their automobile around the block and entered the alley from the opposite direction in order to intercept the three they had observed.

When they entered the alley the two detectives saw the same trio walking southward toward them. As the detectives were leaving their car the three men started back toward the opposite direction. The detectives identified themselves as police officers and ordered the men to stop. One of the three drew a pistol from his coat and fired at the detectives, who returned the gunfire, and the three then ran west between two buildings toward Topeka avenue. Detective Burnett went southward back down the alley to Third street, then proceeded west on it toward Topeka while Zettl proceeded northward in the alley in the police car, meanwhile broadcasting events on his radio. Zettl next observed the three robbers return to the alley and again proceed southward toward Third street. The three then jumped into the back seat of a cream colored Pontiac parked at the curb next to the alley on the north side of Third street. The car headed west on Third street. Meanwhile a third officer, Detective Glynn, in response to police broadcasts, had approached the intersection of Third and Topeka in a panel truck where he saw Detective Burnett shooting at the cream colored Pontiac. Glynn turned his vehicle so as to block the intersection and was struck by the Pontiac. The four occupants of the latter were apprehended. Defendant Chester Irving was the driver of the Pontiac. The three occupants in the back seat were Aaron W. Devine, Willie McKinney (also referred to as McKenzie) and defendant's brother, William W. Irving.

Defendant testified in his own behalf: The weekend prior to the robbery while washing his car at his home he overheard his brother William, Devine, McKinney and a Ray McConnecky (also referred to in the record as McConnethy) planning a robbery; he did not participate in the discussion or the planning; that evening he asked his brother, who was younger than he, if he were really serious about participating in the robbery; his brother assured him he was not going to go through with it; on the morning of the robbery defendant left home for his classes at Butler County Junior College

at El Dorado; his route took him by the shop where his brother William worked; he stopped to see if William would do some work on his car; however, William was not at work and he became worried that his brother might be participating in the robbery; he decided to miss his first-hour class at school and proceeded to the area of Topeka and Central, the vicinity in which he had overheard the robbery was to occur; there he was looking for a red Chevrolet driven by Ray McConnecky so that he could persuade his brother to desist from crime and return to his work; his brother had recently participated in two robberies with McConnecky; he drove down Central avenue past Topeka but did not see McConnecky's vehicle; he then circled the block intending to come back north on Topeka in a further effort to locate the red car; when he got near Topeka he remembered it was a one-way street going in the opposite direction so he parked his car west of the alley on the north side of Third street; he saw the detectives' vehicle proceed northward up the alley and thereafter he heard voices and shots; he saw the two detectives go in opposite directions; later he heard more gunfire; after a short interval his brother, McKinney and Devine "dived" into the back seat of his car and said, "Take off, one of us has been hit"; one shot hit the windshield; he drove off with the sole purpose of getting away without anybody getting hurt and then talking the three into surrendering to the police; he had no gun and no prearranged plan to meet the three men on Third street.

Defendant's brother William, who pled guilty to the robbery, testified that Ray McConnecky took him, McKinney and Devine to the credit union that morning and was to meet them at the back door after the robbery; when the three emerged following the holdup McConnecky was not there; they decided to go down the alley to find a cab; he first noticed his brother Chester's car from a distance as it drove by and later saw it parked on Third street; he had no idea the car would be parked there; the three robbers had the four guns that were found in the back seat of defendant's car; defendant had not participated in planning the robbery.

Defendant-appellant's principal point on appeal is that the court's instructions No. 2 and No. 6 were deficient because neither of the words "knowingly" nor "intentionally" was used in them. He argues that omission of these terms authorized the jury to convict one who unknowingly or unintentionally aids in the commission of a crime. Appellant acknowledges he did not at trial object

to the instructions upon this ground but urges he may now assign their inadequacy as error under K. S. A. 22-3414 (3) because they were clearly erroneous.

Appellant correctly points out that in order to be guilty of aiding and abetting in the commission of crime the defendant must willfully and knowingly associate himself with the unlawful venture and willfully participate in it as he would in something he wishes to bring about or to make succeed (*State v. Schriner*, 215 Kan. 86, Syl. ¶ 6, 523 P. 2d 703; K. S. A. 21-3205 [1]).

The instructions complained of are as follows:

"No. 2. To establish the charge against defendant named herein, the state must prove each of the following elements:

"1. That one or more of the persons named in the Information took money belonging to the Government Employees Credit Union from the presence of employees of said credit union.

"2. That such taking was by threat of bodily harm to said employees.

"3. That one or more of the persons named in the Information were armed with a deadly weapon.

"4. That the defendant aided the perpetration of said robbery in the capacity of driver of a get-away car.

"5. That this occurred on or about the 5th day of March, 1974 in Sedgwick County, Kansas.

. . . . . . . . . . . . . . .

"No. 6. If two or more persons jointly participate in the Commission of a crime, all participants are equally guilty without regard to the extent of their participation."

The instructions were not phrased in the language of K. S. A. 21-3205 (1) as they might well have been in accord with our suggestion in *State v. White*, 211 Kan. 862, 864, 508 P. 2d 842, 844. That statute provides:

"*Liability for crimes of another.* (1) A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime."

See also PIK Criminal, 54.05.

The failure to mention the words "knowingly" or "intentionally" in the two instructions complained of does not of itself, however, warrant the grant of new trial. The propriety of instructions to a jury is to be gauged by their consideration as a whole, each in conjunction with all other instructions in the case (*State v. Ingram*, 211 Kan. 587, 506 P. 2d 1148).

The trial court here also gave the following instructions:

"No. 1. In Count 1 of the Information the state charges that on March 5th, 1974, the defendant, along with William Irving, Aaron Devine and Willie McKinney, did commit the crime of Aggravated Robbery by taking money

belonging to the Government Employees Credit Union at 405 East Central, Wichita, Sedgwick County, Kansas, from the presence of employees of said Credit Union, by threat of bodily harm to the person of said employees and while armed with dangerous weapons, specifically, a .32 caliber revolver, a .38 caliber revolver, a .44 caliber revolver, and a .410 caliber shotgun pistol.

"The state alleges that the *defendant Chester Irving's participation in this robbery was in the capacity of driver of a getaway car.* [Emphasis supplied.]

. . . . . . . . . . . . . .

"No. 5. The intent with which an act is committed, being but the mental state of the person committing it, direct proof of such intent is not required, but it may be proved by any competent evidence, direct or circumstantial. Such intent, however, must be established by the weight of evidence required by these instructions."

It is true the conduct upon which appellant was convicted was of a nature wherein it was the intent which made his behavior, otherwise innocent, criminal. Considered as a whole, we think the jury was so instructed. Had the matter been called to the court's attention the instructions might have been amplified on this point. As it was, the jury was twice told appellant was charged as *participating* in the *robbery* as driver of a getaway car. In the instructions it was not stated that appellant had simply driven an automobile from one place to another at the time in question—his role was specifically pinpointed, albeit in conclusory terms. *Robbery* was defined. Instruction No. 5 focused attention upon the element of intent, or knowledge, with which an act is committed and how that intent may be shown. No. 6 referred to *joint* participation. We think all these instructions, taken together, sufficiently advised the jury as to what had to be shown in order to convict appellant. They cannot be said to be clearly erroneous.

Appellant relies heavily on the ultimate ruling in *State v. Schriner,* supra, but there the instruction on aiding and abetting was a clear misstatement of the law since it stated defendant could be convicted whether the aid was intentional or unintentional. Such is not the import of the instructions here. Appellant was not prejudiced by them.

Appellant's other contention is that his counsel's closing argument to the jury was improperly limited by the trial court. All the court did in this respect was to limit the argument to evidence admitted at trial. The limitation went to counsel's allusion to testimony on a collateral matter which had already been excluded by the trial court. No complaint is made with respect to the initial exclusionary ruling. Argument of counsel is to be confined to the questions at issue and the evidence relating thereto and such in-

ferences, deductions and analogies as can reasonably be drawn therefrom. It is improper for counsel in his argument to the jury to comment on evidence which was excluded by the court when offered. There was no impropriety in the ruling complained of.

The judgment is affirmed.

APPROVED BY THE COURT.

FROMME, J., not participating.