IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,812

STATE OF KANSAS,
*Appellee*,

v.

JAMION D. WIMBLEY,
*Appellant*.

SYLLABUS BY THE COURT

When deciding whether error occurred because a district court judge denied a request to modify a pattern instruction, an appellate court does not view the requested language in isolation. Rather, the appellate court considers the jury instructions as a whole and decides whether, even without language requested by a party, the instructions properly and fairly stated the applicable law or whether it is reasonable to conclude the instructions could have misled the jury or do not address a defense.

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed August 20, 2021. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, argued the cause and was on the briefs for appellant.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

1

The opinion of the court was delivered by

LUCKERT, C.J.: This case requires us to answer whether a district court judge errs by not adding requested and legally correct language to a pattern jury instruction. Jamion Wimbley argues a judge needed to instruct the jury on his theory of defense against the State's assertion that he aided and abetted others who shot and killed two people. He contends the judge needed to tell the jury that a defendant's mere presence at the scene of a crime does not itself establish guilt and that a defendant must willfully and knowingly engage in a criminal enterprise to be guilty of aiding or abetting a crime's commission. As he argues, his requested language accurately states the law. He ignores, however, language in the instruction that fully explained the law to the jury. And, given that the instructions fully informed and did not mislead the jury and they allowed Wimbley to present his defense, we find no error.

Because Wimbley fails to establish error, we affirm his convictions and sentences.

FACTUAL AND PROCEDURAL BACKGROUND

Wimbley and several associates became embroiled in an altercation with rival gang members that led to gunfire that left Brenton Oliver and Betty Ann Holloman dead at Holloman's Wichita home. In the weeks before the shooting, conflict between the two gangs had escalated. At one point, Wimbley joined in a fistfight that included Oliver.

On the day of the shooting, Wimbley drove a friend to Holloman's residence. Oliver and several others were already at the residence. Wimbley and Oliver argued, yelling at each other. As Wimbley departed, witnesses heard him say, "I got something for your bitch ass, I'll be back."

2

After Wimbley left, some of his associates arrived at the Holloman residence and began arguing and fighting with Oliver and others. Wimbley then returned, driving a vehicle with Brent Carter in the passenger seat and Quincy Carter in the back seat.

As Wimbley pulled up, someone began shooting from his car. Eyewitness testimony about the next few minutes describes a confusing flurry of activity. Testimony about the events varied, but it painted a picture of Wimbley and his passengers exiting the vehicle and at least one of them firing a gun. The evidence about whether it was Wimbley or one of his passengers who fired shots was inconsistent; at least one witness testified Wimbley fired a shot before he got out of the vehicle. Some evidence suggests Wimbley punched Oliver. When the shooting stopped, Wimbley drove away with Brent Carter and Quincy Carter.

Holloman and Oliver were both shot. Holloman died at the scene. Oliver died a short time later at the hospital.

After a judge allowed Wimbley to withdraw a guilty plea, the State presented evidence to a jury on charges of two counts of felony murder, criminal discharge of a firearm at an occupied dwelling, criminal discharge at an occupied vehicle, and one count of being a felon in possession of a firearm. The jury found Wimbley guilty of all charges, except for being a felon in possession of a firearm. The district court judge sentenced him to two consecutive hard 25 life sentences and a consecutive 47-month controlling guidelines sentence for the two criminal discharge convictions.

Separate juries also convicted Wimbley's passengers of crimes arising from Holloman's and Oliver's deaths. See *State v. Carter*, 312 Kan. 526, 477 P.3d 1004 (2020); *State v. Carter*, 311 Kan. 783, 466 P.3d 1180 (2020).

ANALYSIS

Wimbley raises a single issue in his direct appeal from his jury trial and sentence. He argues the district court judge erred by not granting his request to add language to the pattern instruction that addresses a defendant's responsibility for the crimes of another, PIK Crim. 4th 52.140 (2020 Supp.). He does not argue the pattern instruction misstated the law. Rather, he argues the jury needed more direction, and the judge should have added that direction by saying mere presence at a crime scene is not enough to prove guilt and by setting out the necessary mental state for aiding and abetting. To explain the mental state, Wimbley argues the jury should have been told that he must have willfully and knowingly engaged in a criminal enterprise that led to the deaths of Oliver and Holloman.

As a general proposition, this court has strongly recommended use of the pattern instructions because they "'have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions.'" *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009) (quoting *State v. Holbrook,* 261 Kan. 635, 637, 932 P.2d 958 [1997]); see *State v. Mitchell*, 269 Kan. 349, 357, 7 P.3d 1135 (2000). In other words, if a court follows the PIK instructions, more than likely the instruction will be legally correct, not because of any independent legal significance of the pattern instruction, but because the committee usually writes an instruction that accurately reflects the law. That said, district court judges may add language to a pattern instruction if the circumstances of a particular case require doing so. *State v. McDaniel*, 306 Kan. 595, 616, 395 P.3d 429

4

(2017); see *State v. Hebert*, 277 Kan. 61, 87, 82 P.3d 470 (2004) ("Modifications or additions should only be made if the particular facts of a case require it.").

Here, the district court judge stayed close to the pattern instruction:

"[A] person is criminally responsible for a crime if the person, either before or during its commission, and with the mental culpability required to commit the crime intentionally aids another to commit the crime.

"All participants in a crime are equally responsible without regard to the extent of their participation. However, mere association with another person who actually commits the crime or mere presence in the vicinity of the crime is insufficient to make a person criminally responsible for the crime."

See PIK Crim. 4th 52.140 (2020 Supp.). The first paragraph has slight, nonsubstantive differences from the pattern instruction. The second paragraph of the instruction is identical to the pattern instruction and stems from this court's approval of this language in *State v. Llamas*, 298 Kan. 246, 253, 311 P.3d 399 (2013). The pattern instruction committee has bracketed this language and said its use is optional. Notes on Use, PIK Crim. 4th 52.140.

Toward the end of Wimbley's trial, the judge presented the parties with proposed jury instructions. Those instructions did not include this optional language. But Wimbley asked that it be added, and the judge did so. The judge did not add other language Wimbley wanted, however. The other language, as requested by Wimbley, would have explained:

5

"Mere association with the principals who actually commit a crime or mere presence in the vicinity of a crime is insufficient to establish guilt as an aider and abettor. Rather, to be guilty of aiding and abetting in the commission of a crime, a defendant must willfully and knowingly associate with an unlawful venture and willfully participate in it as the defendant would in something he or she wishes to bring about or to make succeed."

As Wimbley argues, this court has recognized that this language is "'well-established'" in *Llamas*, 298 Kan. at 253 (quoting *State v. Edwards*, 291 Kan. 532, 551-52, 243 P.3d 683 [2010]). See *State v. Green*, 237 Kan. 146, Syl. ¶ 4, 697 P.2d 1305 (1985); *State v. Schriner*, 215 Kan. 86, 92, 523 P.2d 703 (1974). But the pattern instruction committee has not added this language to the instruction, even as an option for use in an appropriate case. See PIK Crim. 4th 52.140.

Wimbley argues the court erred by not adding this language given that it is well established, legally accurate, factually appropriate given the evidence in the case, supportive of his defense, and requested. To decide whether he is correct, we begin with the familiar multi-step process appellate courts employ when analyzing jury instruction issues. See *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012) (setting out four steps of [1] reviewability of the issue from both jurisdiction and preservation viewpoints, [2] factual appropriateness, [3] legal appropriateness, [4] if the district court erred, whether the error was harmless).

At the first step, we examine if Wimbley preserved the issue, exercising an unlimited standard of review. *Plummer*, 295 Kan. 156, Syl. ¶ 1. The answer to this question dictates the test we apply in deciding whether we must reverse Wimbley's conviction—a question that only arises if we decide the court erred. See *State v. McLinn*,

6

307 Kan. 307, 317-18, 409 P.3d 1 (2018). The parties agree that Wimbley asked the judge to add the language and that he thus preserved the issue.

Under another step of the jury instruction analytical framework, we must consider the factual appropriateness of Wimbley's requested language. *Plummer*, 295 Kan. 156, Syl. ¶ 1. Factual appropriateness depends on whether sufficient evidence, viewed in the light most favorable to the requesting party, supports the instruction. *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016).

Here, the parties do not dispute that one of the State's theories—an alternative to the jury finding that Wimbley fired the fatal shots—rested on the jury unanimously agreeing that Wimbley should be held responsible for the criminal acts of his passengers. Under this theory, if Wimbley willingly participated in the criminal venture, he is criminally responsible for the murders even if he did not fire the shots that killed Holloman and Oliver.

K.S.A. 2020 Supp. 21-5210(a) codifies this theory of liability: "A person is criminally responsible for a crime committed by another if such person, acting with the mental culpability required for the commission thereof, advises, hires, counsels or procures the other to commit the crime or intentionally aids the other in committing the conduct constituting the crime." But mere association with a bad actor cannot establish guilt through accomplice liability. *Llamas*, 298 Kan. at 253; *Green*, 237 Kan. at 149; *State v. Wilson & Wentworth*, 221 Kan. 359, 367, 559 P.2d 374 (1977); *Schriner*, 215 Kan. at 92. Rather, "to be guilty of aiding and abetting a defendant must willfully and knowingly associate himself with the unlawful venture and willfully participate in it as he would in something he wishes to bring about or to make succeed." *Schriner*, 215 Kan. at 92.

7

The State presented evidence showing that Wimbley drove those whom eyewitnesses identified as the shooters to and from the scene, and that he exited the car to join in the fighting. But Wimbley's theory of defense was that he was not a knowing participant in a criminal venture. Rather, he was a victim of circumstance who gave two friends a ride and was unaware that the events would lead to bloodshed. And some eyewitnesses stated Wimbley did not have a firearm. Plus, the evidence offered reasons Wimbley might have been at the scene for purposes other than to fight. An instruction about mere presence and explaining the mental culpability necessary for liability under an aiding and abetting theory was thus factually appropriate.

Another step in the instruction review framework requires us to consider whether Wimbley's requested accomplice liability language was legally appropriate. *Plummer*, 295 Kan. 156, Syl. ¶ 1. To be legally appropriate, the instruction must fairly and accurately state the applicable law. *State v. Broxton*, 311 Kan. 357, 361, 461 P.3d 54 (2020); *Plummer*, 295 Kan. at 161. We exercise unlimited review in deciding the legal appropriateness of language in an instruction. See *State v. Johnson*, 304 Kan. 924, 931-32, 376 P.3d 70 (2016).

Here, before Wimbley's trial, we had approved the language as legally appropriate. E.g., *Llamas*, 298 Kan. at 253; *Edwards*, 291 Kan. at 551-52.

This, however, does not answer whether a district court judge errs by not including *all* legally and factually appropriate language requested by a criminal defendant. Wimbley argues the judge must do so. For support he points to *State v. McCullough,* 293 Kan. 970, 974, 270 P.3d 1142 (2012), and its statement that "a defendant is entitled to instructions on the law applicable to his or her defense theory if there is sufficient

8

evidence for a rational factfinder to find for the defendant on that theory." While this proposition is well settled, it does not mean a defendant is entitled to every permissible instruction touching on the defense's theory. We recently made this point in *State v. Liles*, 313 Kan. 772, 780-81, ___ P.3d ___ (No. 121,459 filed July 16, 2021).

In *Liles*, a cooperating witness received benefits, leading the defendant to request an instruction that would have advised caution when weighing the testimony of an informant who will receive a benefit for testifying. The instruction, while not a pattern instruction, accurately reflected the law. Even so, we held the district court judge did not err by denying the defendant's request to give the instruction. 313 Kan. at 781. We did so despite language in *Plummer*, 295 Kan. at 162, that offered some support for an argument that a judge must give a requested permissible instruction that is supported by the evidence. *Plummer* said: "'If an instruction is legally appropriate and factually supported, a district court errs in refusing to grant a party's request to give the instruction.'" *Liles*, 313 Kan. at 780 (quoting *Plummer*, 295 Kan. at 162). We distinguished *Plummer* because it involved a lesser included offense issue, and K.S.A. 2020 Supp. 22-3414(3) requires judges to give lesser included offense instructions if some evidence would reasonably justify a conviction of the lesser included crime. 313 Kan. at 780; see *Plummer*, 295 Kan. at 158, 160-61. As a result, "the instructions as a whole necessarily would not accurately state the law because they would not comply with the statutory command." *Liles*, 313 Kan. at 780. But we noted no statute directed the court to give the cautionary instruction about an informant's (or a cooperating witness') testimony. 313 Kan. at 780.

We noted that viewing a "requested modification in isolation also is inconsistent with both the scope of this court's review and the law surrounding the instruction." *Liles*, 313 Kan. at 780. Under that scope of review, appellate courts consider whether, even without language requested by a party, the instructions as a whole ""properly and fairly

9

state the applicable law or whether it is reasonable to conclude that they could have misled the jury.'"" 313 Kan. at 780 (quoting *In re Quillen*, 312 Kan. 841, 849, 481 P.3d 791 [2021]); see, e.g., *State v. Hebert*, 277 Kan. 61, 87, 82 P.3d 470 (2004); see also *State v. Todd*, 299 Kan. 263, 271, 323 P.3d 829 (2014) ("'[A] failure to provide the jury with the cautionary accomplice witness instruction . . . is not error . . . when the jury is cautioned about the weight to be accorded testimonial evidence in other instructions.'"); *State v. Walker*, 252 Kan. 279, 295, 845 P.2d 1 (1993) ("Jury instructions are to be considered together and read as a whole without isolating any one instruction."). When read together, the instructions in *Liles* properly stated the law and did not mislead the jury. 313 Kan at 780-81.

The same analysis applies in this case. We have long held that it is not error for a district court judge to decline to include language about knowingly and intentionally joining in a criminal enterprise. This is because "juries are presumed to intuit from the word 'intentionally' in the pattern[] instruction that proof of mere association or presence would be insufficient to convict." *Edwards*, 291 Kan. at 552; *State v. Davis*, 283 Kan. 569, 582-83, 158 P.3d 317 (2006); *State v. Hunter*, 241 Kan. 629, 639, 704 P.2d 559 (1987); see PIK Crim. 4th 52.140 ("A person is criminally responsible for a crime committed by another if the person, either before or during its commission, and with the mental culpability required to commit the crime *intentionally* aids the other person to commit the crime." [Emphasis added.]).

Even so, as Wimbley points out, in other cases in which a defendant requested language informing the jury that mere association with bad actors or presence at a crime scene is not enough and a defendant must intentionally join in the criminal enterprise, we have acknowledged that such a statement "is the law in this State [and] precisely fit the defense theory and perhaps the better practice would have been to modify the pattern[]

10

instruction accordingly." *Edwards*, 291 Kan. at 552. In *Llamas*, citing *Edwards*, we again said that use of the language would be a better practice. And we encouraged district court judges to use the language. 298 Kan. at 261.

Despite that recognition and encouragement, we noted that "[f]ailing to do so may not constitute error if, as in this case, the instructions properly and fairly state the law as applied to the facts of the case." *Llamas*, 298 Kan. at 261-62. That conclusion was under facts like those in this case.

A jury convicted Samuel D. Llamas of felony murder and discharging a firearm into an occupied vehicle under an aiding and abetting theory. Llamas had gone with another man to confront the victim about a drug money debt; during the encounter, the other man shot and killed the victim. Llamas requested the same language as that requested by Wimbley, but the district court declined to expand on the then-existing PIK instruction, which was substantively the same as the first paragraph of the instruction given in Wimbley's trial. 298 Kan. at 258 (quoting PIK Crim. 3d 54.05). We held that it was not error to give the pattern instruction, without elaboration, because "the instruction as given was consistent with and did not foreclose [Llamas'] defense." 298 Kan. at 261. And there was "no indication the failure to add the mere association or presence language led to a misunderstanding by the jury." 298 Kan. at 261. Given those circumstances, we held the district court judge did not err when he denied the request for the added language. 298 Kan. at 261.

More recently, in *State v. Hilt*, 299 Kan. 176, 322 P.3d 367 (2014), we again held that the court's failure to include "mere association" language was not error even though we encouraged use of the language. But we added that "the better practice is to add the

11

requested language in cases such as this, and failure to do so may imperil convictions in future similar cases." 299 Kan. at 185-86.

Despite this warning, in the seven years since *Hilt*, we still have not encountered circumstances that imperil a conviction. During that time, we have decided at least four more appeals in which we held a district court judge did not commit reversible error even though the judge used the first sentence of the pattern instruction only. PIK Crim. 4th 52.140 ("A person is criminally responsible for a crime committed by another if the person, either before or during its commission, and with the mental culpability required to commit the crime intentionally aids the other person to commit the crime."). See, e.g., *Carter*, 311 Kan. at 792-93; *State v. Potts*, 304 Kan. 687, 703-04, 374 P.3d 639 (2016); *State v. Williams*, 299 Kan. 1039, 1046-47, 329 P.3d 420 (2014); *State v. Littlejohn*, 298 Kan. 632, 650, 316 P.3d 136 (2014).

In *Potts*, 304 Kan. 687, we considered a nearly identical instructional challenge to that made by Wimbley, although Deaarion Potts did not request the language at trial. Even without a request, the district court included "mere association" language in the jury instruction but did not add language about the required mental state. On appeal, Potts argued the district court judge should have included the statutory definition of intentional conduct along with the aiding and abetting instruction. Under the statute in effect at the time, K.S.A. 2012 Supp. 21-5202(h), Potts argued the judge should have instructed the jury that "[a] person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result." 304 Kan. at 701. This statutory language, although not identical to that requested by Wimbley, is substantively similar.

12

We held the instruction was legally correct and it was not error to omit the definition of intentional conduct because "[t]he instruction as a whole clearly conveyed to the jury that a defendant, in order to be found guilty for a crime committed by another, must have intentionally aided in the commission of the crime." *Potts*, 304 Kan. at 704. It thus "was not legally necessary for the district court to add the definition of intentional conduct *sua sponte* to the instruction it gave the jury on aiding and abetting liability. Based on the caselaw cited above, doing so would have been redundant." 304 Kan. at 704.

Wimbley fails to persuade us a different result is required in his case. The jury was told he had to engage in intentional conduct. And it was told mere association did not establish guilt. From this the jury could infer mere presence at a crime scene likewise did not establish guilt. Nor did Wimbley show that the lack of the mere presence language or a statement about what it means to act intentionally led to a jury misunderstanding of what it had to find. The jury did send a written request for a clarification of mental culpability and "criminall responsible [sic]." After conferring with the parties, the judge referred the jury to Instructions 5, 7, and 11. Instruction 5 told the jury that the State must prove that Wimbley or another discharged a firearm at a vehicle; Instruction 7 told the jury that the State must prove that Wimbley or another discharged a firearm at an occupied dwelling; and Instruction 11 was the aiding and abetting instruction that said he had to act intentionally in aiding and abetting the crime. These instructions, when read as a whole, properly and fairly stated the applicable law, including the required mental state, and did not mislead the jury. And, as in *Llamas*, 298 Kan. at 261, the instruction as given aligned with and did not foreclose Wimbley's defense.

In conclusion, when deciding whether error occurred because a district court judge denied a request to change a pattern instruction, an appellate court does not view the

added language in isolation. Rather, the appellate court considers all the jury instructions as a whole and decides whether, even without language requested by a party, the instructions properly and fairly stated the applicable law or whether it is reasonable to conclude the instructions could have misled the jury or do not address a defense. Applying this standard here, there was no error. Because there was no error, we need not advance to the final step of the appellate process and evaluate whether the verdict would have been different had the judge added Wimbley's requested language to the aiding and abetting instruction. See *Llamas*, 298 Kan. at 261. We affirm Wimbley's convictions.

Affirmed.