No. 48.640

EBEN W. CARPENTER, *Appellee,* v. STATE OF KANSAS, *Appellant.*

(575 P 2d 26)

Opinion filed February 25, 1978.

*Gene M. Olander,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellant.

*David J. Waxse,* of Payne & Jones, Chartered, of Olathe, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: The state appeals from the granting of petitioner's motion under K.S.A. 60-1507. In vacating and setting aside the judgment and sentence the trial court found petitioner had been denied his constitutional right to effective assistance of counsel and ordered a new trial.

The facts which form the basis for petitioner's original conviction of second-degree murder are set out in this court's opinion in *State v. Carpenter,* 215 Kan. 573, 527 P.2d 1333. Petitioner was charged with the murder of Willis Upshaw. The state's evidence showed that petitioner and his brother owned and operated a security agency. Upshaw, an employee of the agency, was insured by the brothers and they had him killed in order to collect the insurance proceeds. The murder was carried out by another employee, Donald Brenner. After pleading guilty to second-degree murder Brenner testified for the state and told how he, petitioner, and petitioner's brother had planned the murder. Petitioner defended on the theory that he was not involved in the murder.

Petitioner was convicted in December, 1972, with sentencing being pronounced in February, 1973. Petitioner's direct appeal was decided in November, 1974. On February 19, 1975, petitioner filed a 60-1507 motion, alleging he had been denied his constitutional right to a fair trial because his trial counsel, Ernest J. Rice, was subject to a conflict of interest at the time he represented petitioner in the murder trial. The Honorable Harold

R. Riggs, the original trial and sentencing judge, heard evidence on the motion on May 8, 1975. Although there was dispute over the facts, Judge Riggs concluded a conflict of interest did exist between Rice's representation of petitioner and the insurance company which would be forced to pay the insurance benefits on the policies issued on Upshaw if petitioner was found innocent of the charges. On June 25, 1975, Judge Riggs denied relief on the motion because the conflict of interest existed as to only one of petitioner's three trial counsel and because petitioner failed to show the conflict had any qualitative effect on the representation by his counsel. The judge further concluded the defense afforded defendant was one of the "most thorough, industrious and effective defenses afforded any defendant in any criminal trial" he had observed in his fifteen years on the bench.

A motion for new trial, or, in the alternative, a motion to alter or amend judgment was filed by petitioner. A portion of the motion was heard on July 18, 1975, with the remainder being set for July 25, 1975. In the intervening period Judge Riggs was contacted by the then disciplinary administrator, Earl Hatcher. Although the substance of the conversation is not contained in the record, we are told by counsel that Hatcher felt portions of Judge Riggs' June 25 memorandum decision were incorrect. Specifically, Hatcher felt Judge Riggs had erred in stating that insurance policies had been issued on the life of Upshaw when in fact there were only applications pending at the time of the death, the insurance company would not be required to pay in any event, and thus there was no conflict of interest.

Judge Riggs informed both parties of the conversation and on July 25, 1975, petitioner filed an affidavit of prejudice against Judge Riggs, pursuant to K.S.A. 20-311 (now K.S.A. 1977 Supp. 20-311). Judge Buford Shankel was assigned to hear the affidavit the same day and he disqualified Judge Riggs from further participation in the case. Judge Shankel was then assigned the 60-1507 motion and, after reading a transcript of the evidence taken on the motion, found a conflict of interest and set aside petitioner's conviction. The state filed this appeal.

The first issue raised by the state concerns the timeliness of the filing of the affidavit of prejudice. The state argues the affidavit could not be considered as it had been filed too late in the proceedings. In order to determine the issue it is necessary to set

forth the contents of the affidavit. The document alleged Judge Riggs was prejudiced against petitioner for two reasons. First, it was alleged that Judge Riggs "owed" Rice a favor because of a grant made by the Governor's Committee on Criminal Administration to the Tenth Judicial District at a time when Rice was chairman of that committee. The judge, so the affidavit alleged, was attempting to repay the favor by exculpating Rice for "misconduct" in the representation of petitioner. The second ground for disqualification concerned the *ex parte* communication between the judge and the disciplinary administrator.

The use of an affidavit of prejudice is controlled by K.S.A. 20-311. The statute prescribes the grounds for disqualification, as well as the time and manner by which the affidavit must be filed. Failure to comply with the statute bars consideration of the affidavit. (*State v. Timmons,* 218 Kan. 741, 749, 545 P.2d 358.)

One requirement for filing an affidavit is that it be done in a timely manner. The statute states:

"[A] party shall have seven (7) days after pretrial, or after receipt of written notice of the judge to which the case is assigned or before whom the case is to be heard, whichever is later, in which the affidavit may be filed." (K.S.A. 20-311f[*a*].)

In a case where a pretrial is had the affidavit must be filed within seven days after pretrial. In a case where there is no pretrial the affidavit must be filed within seven days of the time the party receives notice of the identity of the judge to whom the case is assigned or before whom it shall be heard. If a litigant has reason to believe the judge is prejudiced the party is under an obligation to file the affidavit before the trial proceeds. In a situation where a judge is already assigned to a case and events transpire which cause the litigant to believe the judge has become prejudiced the litigant is under an obligation to file the affidavit as soon as he becomes aware of the facts giving rise to the challenge. Failure to act on the knowledge becomes a waiver of his right to make the challenge. (*Morrow v. Watts,* 80 Ark. 57, 95 S.W. 988 [1906]; *Caminetti v. Pac. Mutual L. Ins. Co.,* 22 Cal. 2d 386, 139 P.2d 930 [1943].)

The affidavit in the instant case covers two events. The first took place during the original trial and was known to petitioner either during the original trial or prior to the filing of the 60-1507 motion. In either circumstance, he waived his right to challenge the judge on that basis by failing to raise it at the first opportunity.

A party is under an obligation to assert the prejudice as it arises and may not test the water before deciding whether to request a change of judge on the basis of prejudice (*State v. Munoz,* 110 Ariz. 419, 520 P.2d 291 [1974]), particularly when the alleged prejudice arose before trial and was not raised until the filing of a motion for new trial. (*Schonberg v. Perry,* 247 Cal. App. 2d 436, 55 Cal. Rptr. 579 [1966]; *Agnew v. Cronin,* 197 Cal. App. 2d 535, 17 Cal. Rptr. 273 [1961]; *People v. Sweet,* 19 Cal. App. 2d 392, 65 P.2d 899 [1937].) The rule is stated in 46 Am. Jur. 2d, Judges, § 202, pp. 225-26, as follows:

"It is a well-recognized rule that an application for the disqualification of a trial judge must be filed at the earliest opportunity. The courts generally apply this rule with strictness against a party who, having knowledge of facts constituting a disqualification, does not seek to disqualify the judge until an unfavorable ruling has been made. . . ."

Examining the second ground for disqualification, we see nothing present which constitutes such ground, even if we take petitioner's affidavit and other statements at face value. The affidavit alleges an *ex parte* communication took place, which both parties admit; however, the effect of the communication is disputed. Petitioner alleges the communication prejudiced Judge Riggs against him while the motion for new trial was pending. The state argues the communication could have had no effect on the judge as he had already ruled against defendant on two occasions and the pending motion was only a formality.

We see the issue from a different perspective. The communication between the judge and the disciplinary administrator arose after the judge wrote Hatcher to inform him of Rice's apparent conflict of interest. The conflict arose from the fact Rice also represented the insurance company which might be required to pay death benefits to the brothers if they were not found guilty of murdering Upshaw. At the time of the communication the question was unresolved because civil litigation was pending to determine whether policies had been issued before Upshaw was murdered. Hatcher responded to Judge Riggs' letter by telephone. He told Judge Riggs that because no policies had been issued and there were only pending applications for policies at the time of Upshaw's death, there was no conflict of interest. Judge Riggs promptly informed both parties of the communication.

Prior to this time Judge Riggs had already determined a conflict

of interest existed; thus, that fact was already determined in petitioner's favor. The judge also found that petitioner's attorney disclosed to petitioner before trial that he represented the insurance company, but did not disclose that he was its general counsel and a director. The trial court ruled that petitioner was required to show actual prejudice resulting from the conflict before relief could be granted. Petitioner failed to do this. On motion for new trial petitioner contended, as he had all along, that any conflict of interest required the automatic granting of a new trial. The substance of the *ex parte* communication did not concern any matter under consideration in the motion for new trial and could not have affected its outcome. The communication did not constitute a ground for disqualification in this case.

This is not to be taken as a condonation of *ex parte* communications involving matters under litigation. Such practices are frowned upon. (Code of Judicial Conduct, Canon 3 A. [4], 220 Kan. cxxix.) An *ex parte* communication does not automatically require a judge to be disqualified. Each case must turn on its own facts. Here the communication was not between a party litigant and the judge, but between the judge and an outsider. The communication was unsolicited and did not concern matters which were under consideration on the motion for new trial.

Petitioner argues the communication should disqualify the judge because it was a criticism of his earlier decision and exerted pressure which could have caused him to change his mind. Undoubtedly, every judge is from time to time subject to criticism for his decisions, but criticism brought to his attention does not automatically make him biased. (*In re Union Leader Corporation,* 292 F.2d 381, 389 [1st Cir. 1961].) In order to remove a judge because he has been criticized a showing of prejudice must be made. No such attempt was made in this case.

For the foregoing reasons we hold that Judge Shankel erred in disqualifying Judge Riggs and in rehearing the 60-1507 motion. The decision vacating petitioner's original conviction is reversed. The order and rulings of Judge Riggs are reinstated and the case is remanded with instructions to proceed from the stage of litigation existing when Judge Riggs was disqualified.

PRAGER, J., not participating.