(673 P.2d 109)
No. 55,098

STATE OF KANSAS, *Appellee*, v. GINA L. WAUFLE, *Appellant*.

Opinion filed November 23, 1983.

*Harold T. McCubbin*, of Harold T. McCubbin, Chartered, of Norton, for the appellant.

*R. Douglas Sebelius*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before SWINEHART, P.J., ABBOTT and REES, JJ.

SWINEHART, J.: This is an appeal from the District Court of Norton County which found defendant guilty of criminal damage to property of less than $100, a class A misdemeanor, in violation of K.S.A. 21-3720. The defendant raises the following issues on appeal: (1) Did the trial court err in declining to dismiss the complaint as being duplicitous? (2) Did the assigned judge err in denying defendant's request for a change of judge? (3) Did the trial court err in giving jury instructions numbered five and six over defendant's objections? (4) Did the trial court err in allow-

ing a witness to testify as an expert? (5) Did the trial court err in admitting into evidence plaintiff's exhibit No. 6? (6) Did the trial court err in denying defendant's motion for a reduction in the docket fee?

The essential facts are undisputed. Defendant and four friends entered the Prairie Dog Recreation Area (PDRA) soon after 10:30 p.m. the evening of May 24, 1982. Defendant and three of the four friends had been drinking beer that evening. At the PDRA they found golf carts, with keys in them, parked in a storage building. Defendant drove a cart owned by Beverly Klein, and took one of her friends as a passenger. The other three persons each drove a cart. The five friends spent from thirty to sixty minutes driving the four golf carts in front of the clubhouse, on the golf greens, and over the golf course. During that time, defendant ran over a young tree with the cart, stopped the cart while her passenger took two course flags, and collided with one of the other golf carts, which was owned by Ray Farewell. When the carts driven by defendant and two of her friends became stuck in the mud, the five people left the scene.

The complaint filed against defendant on June 2, 1982, charged her with criminal damage to property in excess of $100, in violation of K.S.A. 21-3720, a class E felony. At arraignment on July 13, 1982, defendant stood mute. On July 27, 1982, defendant filed a motion for change of judge, alleging that Judge Worden was biased and prejudiced by virtue of his "property interest" in the PDRA. Both defendant and the judge filed affidavits and forwarded copies to Judge Flood, administrative judge of the 23rd judicial district, who had been assigned to rule on the motion. Judge Flood overruled the motion for change of judge on July 30, 1982.

By trial to a jury on August 27, 1982, defendant was found guilty of criminal damage to property of less than $100, a class A misdemeanor. On October 28, 1982, defendant filed a motion to reduce the felony docket fee of $70 to a misdemeanor docket fee of $40. The court denied this motion on November 9, 1982. Appeal to this court was properly perfected.

Defendant first contends that the trial court erred in allowing the case to proceed upon a complaint which charged multiple crimes in one count. The complaint, in pertinent part, stated:

"That on or about the 24th day of May, 1982, the said Gina L. Wau-

fle . . . did then and there contrary to the statutes . . . unlawfully feloniously and willfully by means other than fire or explosive, injure, damage and substantially impair the use of property, to-wit: 2-golf carts, 1-Locust tree, flag poles, flags and stakes, of a value of more than $100.00 in which another, to-wit: Ray Farewell, Bev Klein and the Prairie Dog Recreation Association, has an interest, without the consent of said other persons, said damage being in excess of $100.00."

Defendant claims that this complaint is duplicitous because it charges that property of three different persons or entities was damaged: Ray Farewell's golf cart; Bev Klein's golf cart; and the PDRA's locust tree, flag poles, flags and stakes.

In distinguishing between the terms "duplicity" and "multiplicity," *State v. Dorsey*, 224 Kan. 152, 154, 578 P.2d 261 (1978), states: " ' "Duplicity" is the joining in a single count of two or more distinct and separate offenses.' " " 'The vice of duplicity is that the jury is unable to convict of one offense and acquit of another offense where both are contained in the same count.' " *State v. Hammond*, 4 Kan. App. 2d 643, 646, 609 P.2d 1171, *rev. denied* 228 Kan. 807 (1980).

"Although it is the general rule that it is improper to lay the ownership of property involved in an offense in several different persons, in a single count in an indictment, an indictment charging in one count an offense involving the property of several different owners is not rendered duplicitous by reason of the allegation of plurality of owners, where it charged the commission of one offense committed at one time and place and constituting one transaction." 41 Am. Jur. 2d, Indictments and Informations § 219.

Research has revealed no Kansas case which discusses duplicity in the context of an accused charged with criminal damage to property. Most discussions of duplicity have occurred in cases in which the accused has been charged with theft crimes. In the context of theft crimes, this court has stated:

"A problem does arise from charging a defendant with two separate thefts when property that belongs to two different owners is stolen in the same incident. Our research indicates that the appellate courts of this State have not considered this identical question before. Out of the thirty-five states that have considered the question, thirty-four appear to have adopted the single larceny theory. In summarizing the annotation, the author of Annot., 37 A.L.R.3d 1407, states at 1409-10:

" 'The overwhelming majority of jurisdictions follow generally the so-called "single larceny doctrine"; that is, that the taking of property belonging to different owners at the same time and place constitutes but one larceny. Various rationales have been propounded in support of this position, perhaps the most common one being that such taking is one offense because the act of taking is one continuous act or transaction, and since the gist of the offense is the felonious

taking of property, the legal quality of the act is not affected by the fact that the property stolen belonged to different persons.

" 'Other rationales supporting the rule are concerned with the harshness of the punishment which might result from a contrary holding, or with the unconstitutionality of the double jeopardy to which a defendant would be subjected under a contrary decision.' " *State v. Stoops*, 4 Kan. App. 2d 130, 136-37, 603 P.2d 221 (1979).

Although this court found it unnecessary to reject or adopt the single larceny doctrine in *Stoops*, we indicated:

"If we were to adopt the single larceny doctrine, it seems to us the test to be applied to determine if there are separate offenses or only a single offense should be based on whether the evidence discloses one general intent to steal or distinct and separate intents. Each case necessarily would have to be decided on its own facts, and a defendant could be convicted of separate thefts only if the evidence showed the offenses to be separate and distinct and not committed pursuant to one intention, one impulse, or one plan." pp. 139-40.

This "single impulse rule" applies equally well to the crime of criminal damage to property. In the present case defendant participated in a series of destructive acts lasting thirty to sixty minutes and causing damage to property owned by three different persons or entities. The evidence is clear and convincing that the offenses were not separate and distinct. Rather, the acts comprising the offenses occurred at the same time, at the same place, and were committed pursuant to a single impulse of defendant and her companions. The trial court did not err in declining to dismiss the complaint as being duplicitous.

Even assuming that the complaint was duplicitous, defendant cannot now be heard to object to its form. K.S.A. 22-3208(3) states:

"Defenses and objections based on defects in the institution of the prosecution or in the complaint, information or indictment . . . may be raised only by motion before trial. . . . Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver."

Defendant first raised her objection to the form of the complaint after the jury was empaneled and following the conclusion of all the evidence. Only jury instructions and closing arguments remained to be given. Defendant has therefore waived the complaint's defect of duplicity and has precluded appellate review. See *State v. Marshall & Brown-Sidorowicz*, 2 Kan. App. 2d 182,

194, 577 P.2d 803, *rev. denied* 225 Kan. 846 (1978) (consent to trial is waiver of defenses and objections to defective complaint).

Defendant next contends that Judge Steven Flood, the assigned judge, erred in denying defendant's requst for a change of judge when he found defendant's affidavit of prejudice to be both untimely and insufficient.

The Kansas Supreme Court considered the timeliness of the filing of an affidavit of prejudice in *Carpenter v. State,* 223 Kan. 523, 525, 575 P.2d 26 (1978), and stated:

"The use of an affidavit of prejudice is controlled by K.S.A. 20-311. The statute prescribes the grounds for disqualification, as well as the time and manner by which the affidavit must be filed. Failure to comply with the statute bars consideration of the affidavit. (*State v. Timmons,* 218 Kan. 741, 749, 545 P.2d 358.)

"One requirement.for filing an affidavit is that it be done in a timely manner. The statute states:

" '[A] party shall have seven (7) days after pretrial, or after receipt of written notice of the judge to which the case is assigned or before whom the case is to be heard, whichever is later, in which the affidavit may be filed.' (K.S.A. 20-311f[a].)

"In a case where a pretrial is had the affidavit must be filed within seven days after pretrial. In a case where there is no pretrial the affidavit must be filed within seven days of the time the party receives notice of the identity of the judge to whom the case is assigned or before whom it shall be heard. If a litigant has reason to believe the judge is prejudiced the party is under an obligation to file the affidavit before the trial proceeds. In a situation where a judge is already assigned to a case and events transpire which cause the litigant to believe the judge has become prejudiced the litigant is under an obligation to file the affidavit as soon as he becomes aware of the facts giving rise to the challenge. Failure to act on the knowledge becomes a waiver of his right to make the challenge. (*Morrow v. Watts,* 80 Ark. 57, 95 S.W. 988 [1906]; *Caminetti v. Pac. Mutual L. Ins. Co.,* 22 Cal. 2d 386, 139 P.2d 930 [1943].)"

In the present case, defendant received notice that Judge Worden would be her trial judge on July 13, 1982, at her arraignment. At that time Judge Worden set defendant's case for trial and assigned it to himself since he was the only judge available in the 17th judicial district to try and to dispose of a felony case. On July 27, 1982, fourteen days later, defendant became aware of Judge Worden's purported membership in the PDRA and on that day filed an affidavit of prejudice. Defendant contends that this filing was timely because it was made as soon as defendant became aware of the facts giving rise to the challenge. This is not a case in which events causing the judge to become prejudiced transpired after the judge had been assigned to the case as to fall within the *Carpenter* exception. The record

reflects defendant's affidavit was not timely filed. Additionally, when defendant's affidavit was considered together with Judge Worden's affidavit, prejudice of the judge was not established to the court's satisfaction. Therefore, we do not find error on this issue.

Defendant next contends that the trial court erred in giving jury instructions numbered five and six over defendant's specific objections because there was no evidence to support those instructions. Instructions five and six state:

Number five:

"A person who intentionally aids another to commit a crime is responsible for any other crime committed in pursuance of the intended crime, if the other crime was reasonably foreseeable."

Number six:

"A person is criminally responsible for the conduct of another when, either before or during the commission of a crime, and with the intent to promote or assist in the commission of the crime, he intentionally aids or advises the other to commit the crime."

These instructions were basically taken from PIK Crim. 2d 54.06, entitled "Responsibility for Crimes of Another—Crime Not Intended," and 54.05, entitled "Responsibility for Crimes of Another." Authority for each instruction is found in K.S.A. 21-3205 which states:

"(1) A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime.

"(2) A person liable under subsection (1) hereof is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended."

Instruction five relates to circumstances where an unintended, but reasonably foreseeable, crime is committed during the pursuit of an intended crime. We note initially that the element of intent necessary to establish and support criminal responsibility for aiding or abetting another to commit a crime may be inferred from circumstantial evidence. *State v. Schriner*, 215 Kan. 86, 92, 523 P.2d 703 (1974). Accordingly, defendant's contention that there was no evidence of an intended crime is incorrect. The record contains ample evidence that defendant's actions were willful and purposeful and not accidental as to the unlawful use

of the grounds and equipment, which caused damage to substantial property, including trees, golf carts and flag poles. The trial court's giving of instruction five was therefore proper.

Instruction six follows the pattern instruction for aiding and abetting. Decisions have indicated that this instruction is properly given even when a defendant is charged as a principal. See, e.g., *State v. Bryant*, 228 Kan. 239, 245-46, 613 P.2d 1348 (1980); *State v. Ritson*, 215 Kan. 742, 748, 529 P.2d 90 (1974). From the totality of the evidence, the jury could have reasonably concluded that one of the defendant's co-actors, Terri Boller, was the principal and that the defendant aided or abetted Terri in the criminal damage to property. Terri, with her cousin, had gone to the PDRA earlier in the evening of May 24th to see if there were any keys in the golf carts. She then returned to the Stage Coach Inn, picked up defendant and two others, and drove all five in her car to the PDRA. Terri knew where the keys were, and although she did not herself drive a golf cart, she took a flag off a pole when defendant, with whom she was riding, stopped the cart. After the carts got stuck in the mud, Terri drove the group back to town in her car. The trial court did not err in giving instruction six.

Defendant next contends that the trial court erred in allowing Clifford Meireis to testify as an expert because of his lack of qualifications and the lack of foundation for his testimony. Meireis testified to the value of the tree that was damaged when defendant ran over it with the golf cart she was driving.

K.S.A. 60-456(*b*) provides:

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness."

In reviewing the qualifications of an expert witness, it is stated in *Grohusky v. Atlas Assurance Co.*, 195 Kan. 626, 629-30, 408 P.2d 697 (1965):

"A witness, in order to be competent as an expert, must show himself to be skilled or experienced in the business or profession to which the subject relates. There are no precise requirements as to the mode in which skill or experience shall have been acquired. Scientific study and training is not always essential to qualify a witness as an expert. A witness may be competent to testify as an expert although his knowledge was acquired through the medium of practical experience rather than by scientific study and research."

This court has more recently noted:

"The qualifications of an expert witness and the admissibility of his testimony are within the sound discretion of the trial judge. *Plains Transp. of Kan., Inc. v. King*, 224 Kan. 17, 21, 578 P.2d 1095 (1978). A trial court has wide discretion in determining whether it will receive opinion evidence. An abuse of discretion must be found in order to reverse the trial court on the admission of expert testimony. *Lindquist v. Ayerst Laboratories, Inc.*, 227 Kan. 308, Syl. ¶ 3, 607 P.2d 1339 (1980)." *U.S.D. No. 490 v. Celotex Corp.*, 6 Kan. App. 2d 346, 363, 629 P.2d 196, *rev. denied* 230 Kan. 819 (1981).

We find that the trial court did not abuse its discretion when it allowed Clifford Meireis to testify as an expert. Evidence revealed that at the time of trial, Mr. Meireis was employed as a county extension agricultural agent for Norton, Kansas, and he had been employed in that position for fifteen years. He testified that the Kansas Forestry Service prepared a document which included three methods used nationwide for evaluating damage to trees and shrubs for value purposes. Mr. Meireis was familiar with the procedures and methods included in that document, and had used them approximately twelve times to determine the value of trees or shrubs. He testified that he visited with a Mr. Vincent of the PDRA who told him that the tree was a honey locust, approximately 10 ½ feet tall, 2 ½-3 inches in diameter, several years old, located on No. 9 fairway at the PDRA, and that it was completely destroyed. Although Mr. Meireis visited the site where the tree had been located, he never actually saw the tree.

Method No. 3, the method used by Mr. Meireis, required an evaluation of the diameter of the tree trunk, the species and variety of tree, the condition and "looks" of the tree, and the location of the tree. Because he did not know whether the tree was a common honey locust or a thornless honey locust, he applied the method as though the variety of the tree had been a common honey locust, which has less value than does a thornless honey locust. He also assumed that the tree was in good condition, although he stated he did not have actual knowledge of the tree's condition. Applying method No. 3, according to accepted standards, to the information given him, Mr. Meireis determined the tree's value to be $74.98. This evidence supports the trial court's ruling that Mr. Meireis was qualified to testify as an expert witness, and that adequate foundation was laid for his

testimony. Mr. Meireis was competent to answer the hypothetical question of the value of the tree damaged by defendant at the PDRA.

Defendant next contends that the trial court erred in admitting as exhibit No. 6 an estimate of damages to Bev Klein's golf cart, because the estimate lacked authentication and was hearsay.

K.S.A. 60-464 states the general rule requiring authentication:

"Authentication of a writing is required before it may be received in evidence. Authentication may be by evidence sufficient to sustain a finding of its authenticity or by any other means provided by law."

In the present case, the only testimony reflecting on the document's authenticity is Bev Klein's statement that the exhibit appeared to be a true and correct copy of what she received from the body shop which repaired her cart. The genuineness of the writer's signature was not established, the identity of the handwriting contained in the estimate was not revealed, and no indirect or circumstantial evidence was presented from which it could reasonably have been inferred that the document was authentic. See *State v. Rives,* 220 Kan. 141, 143-44, 551 P.2d 788 (1976). The document failed to meet the authentication requirement of K.S.A. 60-464.

Additionally, this estimate, offered to prove the amount of damages to Bev Klein's golf cart, falls within the hearsay rule which states:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible . . . ." K.S.A. 1982 Supp. 60-460.

We agree that the trial court erred in allowing into evidence plaintiff's exhibit No. 6 since the writing was hearsay and was not properly authenticated. However, defendant has not shown this court how she has been prejudiced or harmed by its admission. See, *e.g., In re Johnson,* 214 Kan. 780, 522 P.2d 330 (1974). The record contains other sufficient evidence that Bev Klein's golf cart was damaged, consisting of testimony by a PDRA employee, testimony by defendant's passenger on the golf cart, and a picture of Bev Klein's damaged golf cart. This evidence is sufficient to show that some damage to Bev Klein's cart did occur, and to sustain the jury's verdict against defendant of criminal damage to property less than $100. The trial court's error was harmless and must be disregarded. See *State v. Belt,* 6

Kan. App. 2d 585, 631 P.2d 674, *rev. denied* 230 Kan. 819 (1981), quoting K.S.A. 60-2105.

Finally, defendant claims that the trial court erred in denying her motion for a reduction of the felony docket fee of $70 to the misdemeanor docket fee of $40. Defendant bases this claim upon her belief that the legislature intended to make the docket fee commensurate with the crime of which defendant is convicted, not charged. In the present case, defendant was charged with a felony (criminal damage to property of over $100) but was convicted of a misdemeanor (criminal damage to property of less than $100). Additionally, defendant argues that the 1981 statute applies since defendant's case was filed before July 1, 1982, when the current statute took effect, raising the felony docket fee from $70 to $114 and raising the misdemeanor docket fee from $40 to $84. The State counters that the docket fee should be commensurate with the crime with which defendant is charged, and that the 1982 statute raising the amount of docket fees should apply since defendant was convicted on August 27, 1982, and was assessed costs on October 4, 1982.

We first address the issue whether the legislature intended to make the docket fee commensurate with the crime with which defendant is charged or with the crime of which defendant is convicted. The 1981 statute, K.S.A. 28-172a(*a*) provided:

"Except as otherwise provided in this section, whenever the prosecuting witness or defendant is adjudged to pay the costs in a criminal proceeding in any county, a docket fee shall be taxed as follows:

| | |
|---|---|
| Misdemeanor | $40 |
| Felony | 70 |
| Murder or Manslaughter | 100 |
| Forfeited recognizance | 40 |
| Appeals from other courts | 35 " |

K.S.A. 1982 Supp. 22-3801 provides that if a defendant in a criminal case is convicted, the court costs shall be taxed against defendant. The substantive content of this statute was not changed from the 1981 version. Unlike criminal actions, payment of the docket fee in civil actions must occur upon filing or docketing of the case. K.S.A. 1982 Supp. 60-2001. If the State were correct in its claim that the docket fee should be commensurate with the crime with which defendant is charged, the defendant could be assessed docket fees before, instead of upon,

conviction. However, the legislature chose not to assess docket fees against defendant unless and until defendant is convicted.

More importantly, we find clear evidence of the legislative intent that criminal docket fees be commensurate with the crime of which defendant is convicted and not with which defendant is charged in K.S.A. 1982 Supp. 28-172a(c). This subsection, enacted initially by the 1982 legislature, states:

"If a conviction is on more than one count, the docket fee shall be the highest one applicable to any one of the counts. The prosecuting witness or defendant, if assessed the costs, shall pay only one fee."

For example, if defendant were charged with a felony and two misdemeanors, but convicted only on the two misdemeanor counts, defendant could be assessed only one fee for one of the misdemeanor counts. This subsection expressly reveals legislative intent that the docket fees assessed a criminal defendant correspond with the crime of which defendant is convicted, not that with which defendant is charged.

In the present case, although defendant was charged with a felony, she was convicted of one count of misdemeanor criminal damage to property. Docket fees should have been assessed accordingly.

We next address whether defendant should have been assessed the misdemeanor docket fee of $40, as required by the 1981 version of K.S.A. 28-172a(a), or the misdemeanor docket fee of $84, as required by the 1982 supplement to the same statute. Charges were filed against defendant on June 2, 1982. The increased docket fees took effect on July 1, 1982. Defendant was convicted on August 27, 1982, and was assessed court costs on October 4, 1982.

"The general rule often stated is that a statute operates prospectively unless the language of the statute clearly shows that it is the intention of the legislature that it operate retrospectively. [Citations omitted.] It is also the rule that when a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether suit has been instituted or not, unless there is a saving clause as to existing litigation." *In re Estate of Laue,* 225 Kan. 177, 187-88, 589 P.2d 558 (1979).

This raises the question whether an increase in the amount of the docket fee affects substantive or only procedural rights.

This court has defined a procedural statute by stating:

" '[P]rocedure or practice is the mode or proceeding by which a legal right is enforced, that which regulates the formal steps in an action or other judicial proceedings; a form, manner, or order of conducting suits or prosecutions.' " *Kopp's Rug Co. v. Talbot,* 5 Kan. App. 2d 565, 570, 620 P.2d 1167 (1980).

The fees section of the amended statute is not a part of the law which creates, defines or regulates rights. It does not create any liability against defendant for the crime committed. Rather, the amendment appears to have been routinely made to remedy the defect in the statute caused by inflation and passage of time. No new duty is thereby imposed upon defendant. As such, the statutory amendment appears procedural in nature. Because no savings clause as to existing proceedings was included in the amendment, defendant should have been assessed the misdemeanor docket fee of $84 as is mandated by K.S.A. 1982 Supp. 28-172a(*a*). Instead, defendant was assessed a felony docket fee of $70. Regardless of the construction of a statute made by the trial court, on appeal the statute may be construed and its legal effect determined by the appellate court. The amount of docket fee to be assessed defendant was statutorily controlled and was not a matter within the trial court's discretion.

The judgment of the trial court is affirmed, except as to the issue concerning docket fees, which issue is reversed and remanded with directions to tax the docket fee of $84 in accordance with K.S.A. 1982 Supp. 28-172a(*a*).

Affirmed in part, reversed in part and remanded with directions.