NOT DESIGNATED FOR PUBLICATION

No. 118,144

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYREESE LAMARC WINBURN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed November 9, 2018. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., MALONE, J., and STUTZMAN, S.J.


PER CURIAM: Tyreese Lamarc Winburn appeals his jury trial convictions of aggravated battery, aggravated kidnapping, and criminal possession of a weapon by a convicted felon. Winburn claims the district court judge engaged in judicial misconduct during the instructional phase of trial, which denied Winburn his right to a fair trial. Finding no misconduct or instructional error, we affirm Winburn's convictions.

1

At trial, Wichita Police Officer Brandon Faulkner testified that he was dispatched to the Trail Motel at approximately 3:45 a.m. on September 22, 2015. When Officer Faulkner arrived, the fire department was on scene and there was an unresponsive black male slumped over in a wrought iron chair in the parking lot with swelling and lacerations to his face. Officer Shannon Dunkel also was dispatched to the Trail Motel. Upon arrival, Officer Dunkel observed the victim unconscious in a chair in the middle of the parking lot, struggling to breathe. Officer Dunkel was able to secure security video from the Trail Motel.

Scrape marks on the pavement led the officers directly from the chair in the parking lot to room 129 of the motel. Blood and vomit were visible in the area just outside room 129, including on the door. The officers found blood inside the room as well, including on a mattress cover and the curtains. Officer Faulkner observed the toilet tank had been broken, which let water run onto the carpet. Broken pieces of the tank were found in a dumpster outside.

The male victim, later identified as Mack Arthur Jenkins Jr. was transported to the hospital. Jenkins testified that at the time of the attack, he was an addict using cocaine, crack, and sometimes methamphetamine. Jenkins had gone to the Trail Motel to get drugs from his dealer, who arrived in a white El Camino. The dealer said Jenkins owed him money, which Jenkins denied. The next thing Jenkins remembered was getting pistol-whipped in the head by one guy in the parking lot, with other guys around, and then waking up in the hospital, Jenkins suffered an injured nose, a severe concussion, broken ribs, and cuts to his head and arm which left scars. Jenkins was unable to identify any of his attackers.

Virginia Brown was at the Trail Motel on the night of the attack. Virginia testified that her son, Maurice Brown, arrived at the Trail Motel that night with Kimron Burris and Winburn. She said they arrived in Burris' white El Camino. Security camera video footage confirmed that Burris, Brown, and Winburn exited the car at 12:18 a.m. The video showed some kind of altercation a few seconds after the men exited the car and then Brown reaching under a car for something. The video also showed Winburn and Burris leave the Trail Motel approximately 40 minutes later. About 10 minutes after leaving, Burris returned to the Trail Motel alone and, about a minute later, Burris and Brown left for the last time. Virginia testified that about two hours after the El Camino left for the last time, she saw Jenkins dragged into the parking lot. Virginia said Jenkins was struggling to breathe and was aspirating, apparently on vomit.

Maurice Brown also testified at trial. During Brown's testimony, the jury was shown the security video from the parking lot of the Trail Motel and Brown identified Winburn, Jenkins, Burris, himself, his mother, and other people involved as they appeared in the footage. Brown explained to the jury that he was a codefendant to Winburn but had pled guilty to aggravated battery of Jenkins. With regard to the night in question, Brown said he, Burris, and Winburn drove to the Trail Motel at around 12:15 a.m. Brown said they saw Jenkins in the parking lot when they arrived. Apparently, Winburn believed that Jenkins owed him money, so Winburn got out of the El Camino to "address" Jenkins. Winburn and Jenkins exchanged a few words and then Brown saw Winburn pull a pistol from his basketball shorts and hit Jenkins with it. The one blow rendered Jenkins unconscious. Winburn dragged Jenkins toward room 129, where an occupant let them in. Once inside the room, Winburn used water to wake Jenkins up and then continued to question Jenkins about the money. When Jenkins told Winburn that he did not have any money, Winburn began hitting Jenkins. When Jenkins lost consciousness, Winburn again threw water on Jenkins to wake him up. At some point, Brown left the room. When Brown returned, he saw Winburn and Burris beating Jenkins, even as Jenkins lay unconscious on the ground. Brown could see that Jenkins had

urinated and defecated on himself and was no longer responding when water was thrown on him. Brown told Winburn and Burris that if they continued to beat Jenkins, he would die. The beating stopped, and Jenkins' unconscious body was left on the floor.

Burris also testified and identified the various individuals seen on the security video. Like Brown, Burris explained that he was a codefendant to Winburn and had pled guilty to aggravated battery of Jenkins. Burris described the attack on Jenkins consistent with Brown's testimony, although Burris denied hitting or kicking Jenkins. Burris told the jury that near the end of the beating, Jenkins was thrown into the bathroom, breaking the toilet and causing water to run into the room. Burris said he left the motel with Winburn and then came back later to pick Brown up.

Winburn was arrested several days after the beating of Jenkins, and there was a .22 caliber revolver recovered from the location of the arrest. When interviewed by Detective Joshua Hutchins, Winburn denied being involved and denied being at the scene of the beating. When Hutchins asked whether Winburn knew about the incident, Winburn responded, "[U]m-hum." When Hutchins asked why things went down like they did, Winburn replied, "It wasn't no robbery."

Winburn and his ex-girlfriend Sarena Oliver both testified for the defense in an attempt to establish an alibi for Winburn; specifically, that Winburn was with Oliver at Oliver's home at the time of the beating. The jury also heard testimony that when police came to arrest Winburn, Oliver lied by telling them that Winburn was not at home, even though he was. There also was evidence that Oliver texted Winburn that he should hide his gun because the officers were about to enter the home and arrest him. Oliver ultimately was charged and convicted of obstruction.

After the close of evidence, the district court instructed the jury. The court read the written aggravated kidnapping instruction to the jury, which identified the elements of

"taking" and "confining" as distinct alternative means of committing the crime of aggravated kidnapping and directed the jury to consider each alternative separately from each other. Although not part of the written instruction, the court also instructed, "When you get that verdict form, I think it'll be clear to you how it should be marked." Neither party objected.

The jury ultimately convicted Winburn on all three counts. On the aggravated kidnapping charge, the jury was unanimous as to the alternative means of confining. Winburn filed posttrial motions for acquittal and a new trial, but made no mention of the district court's oral instruction. Nor did Winburn raise the oral instruction when orally arguing his posttrial motions at sentencing.

ANALYSIS

Winburn claims the district judge committed judicial misconduct when, while reading the written jury instructions aloud, he made a prejudicial statement that was not part of the written instructions. Although the statement was made by the court in the middle of the aggravated kidnapping instruction and was directly related to the verdict form on that same charge, Winburn characterizes the issue as judicial misconduct, rather than instructional error, and argues that it is subject to de novo review on appeal, despite his lack of a contemporaneous objection. Notably, judicial misconduct claims do not typically encompass a judge's instructions to the jury. See *State v. Kemble*, 291 Kan. 109, 113, 238 P.3d 251 (2010) (An appellate court must review the particular facts and circumstances of each case to determine whether judicial comments, other than jury instructions, rise to the level of judicial misconduct.). Thus, it appears the issue presented might be more accurately framed as one of instructional error. But regardless of how the issue is framed, Winburn cannot prevail because he has failed to establish he was prejudiced by the court's statement.

5

*Judicial misconduct*

Winburn did not raise a claim of judicial misconduct below or contemporaneously object to the district court judge's statement. Our Supreme Court, however, has reviewed allegations of judicial misconduct, despite the lack of a contemporaneous objection, when the defendant claims a violation of his or her right to a fair trial. See e.g., *State v. Miller*, 308 Kan. 1119, 1154, 427 P.3d 907 (2018) (citing *Kemble*, 291 Kan. at 113; *State v. Tyler*, 286 Kan. 1087, 1090, 191 P.3d 306 [2008]). Accordingly, we will review Winburn's claim.

Allegations of judicial misconduct must be decided on the surrounding facts and circumstances. The party alleging judicial misconduct bears the burden of showing his or her substantial rights were prejudiced. *State v. Hudgins*, 301 Kan. 629, 637-38, 346 P.3d 1062 (2015). If a proper and reasonable construction will render the conduct unobjectionable, it is not prejudicial. *Kemble*, 291 Kan. at 113. Moreover, the "[m]ere possibility of prejudice from a judge's remark is not sufficient to overturn a verdict or judgment." *State v. Miller*, 274 Kan. 113, 118, 49 P.3d 458 (2002).

The Kansas Supreme Court recently clarified the standard for analyzing claims of judicial misconduct:

> "An erroneous ruling by a judge, standing alone, will not establish judicial misconduct. Canon 2, Rule 2.2, Comment [3] (2017 Kan. S. Ct. R. 433) (good-faith errors of fact or law do not violate [Kansas Code of Judicial Conduct]). Rather, the reviewing court will look for conduct that manifests bias, prejudice, or partiality, or otherwise significantly undermines the fairness or reliability of the proceedings. Cf. Canon 2, Rule 2.3, Comment [1] (2017 Kan. S. Ct. R. 434) ('judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute')." *State v. Kahler*, 307 Kan. 374, 384, 410 P.3d 105 (2018), *petition for cert. filed* September 28, 2018.

6

With these standards in mind, we turn to Winburn's claim of judicial misconduct. At the close of evidence, the district court judge read the jury instructions aloud before providing the jury with a written copy of them to use in deliberations. While reading the instruction regarding the aggravated kidnapping charge, the district judge stated:

"The defendant is charged in Count two with the crime of aggravated kidnapping. The defendant pleads not guilty.

"To establish this claim, each of the following—to establish this charge, each of the following claims must be proved:

"One. The defendant took or confined [Jenkins] by force or threat.

"Two. The defendant did so with the intent to hold [Jenkins] to inflict bodily injury on or to terrorize [Jenkins].

"Three. Bodily harm was inflicted upon [Jenkins].

"And, four. This act occurred on or about the 22nd of September, 2015, in Sedgwick County, Kansas.

"The phrase took or confined, set out two alternative means of carrying out the crime of aggravated kidnapping. Taking and confining each denote a distinct alternative means. You must decide each alternative separately on the evidence and law applicable to it, uninfluenced by your decision as to the other alternative charge.

"The defendant may be convicted or acquitted on any or all of the alternative means as charged in Count two. And your findings as to each alternative must be stated in a verdict form signed by the presiding juror.

"*When you get that verdict form, I think it'll be clear to you how it should be marked*.

"In this count, again, Count two, the aggravated kidnapping, the State must prove the defendant committed the offense intentionally.

"A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State." (Emphasis added.)

The italicized portion of the judge's statement was not included in the written instructions.

Winburn asserts in his brief that the court's extemporaneous statement was improper and prejudicial to his case in that the statement "could have been perceived" by the jury as bearing "directly on the elements of the Aggravated Kidnapping charge." We find no impropriety in the judge's statement. When read in context, it is clear that the district judge's statement did not demonstrate bias, prejudice, or partiality towards the State or towards a particular verdict but rather was simply expressing a hope that the verdict form would make sense to the jurors. This is particularly true given that the judge had just explained the complicated concept of alternative means immediately prior to making the comment in question.

Even if the statement had been improper in some way, Winburn has failed to bear his burden to establish that the statement prejudiced his substantial rights or significantly undermined the fairness or reliability of the proceedings. Winburn asserts in his brief that this court "cannot be so certain" that the district judge's statement was not prejudicial. To support his claim that the judge's extemporaneous statement should be construed as prejudicial, Winburn alleges that the statement actually was an attempt by the judge to convey to the jury that the testimony given by Brown and Burris was credible. But Winburn's allegation is based on pure speculation. As set forth above, the mere possibility of prejudice from a judge's remark is not sufficient to overturn a verdict or judgment. *Miller*, 274 Kan. at 118. Moreover, the facts and circumstances surrounding the district judge's statement do not support Winburn's allegation. A proper and reasonable construction of the statement at issue renders it unobjectionable and, therefore, not prejudicial. *Kemble*, 291 Kan. at 113.

*Instructional error*

Winburn's challenge to the district judge's extemporaneous statement also fails when construed as a claim of instructional error. Winburn did not object to the aggravated kidnapping instruction as given or request any additional instructions. When

8

jury instructions are challenged for the first time on appeal, this court reviews the instructions for clear error. See K.S.A. 2017 Supp. 22-3414(3). This requires a two-step analysis. First, we must determine whether there was an error in the instruction, which is a question of law subject to unlimited review. If an error exists, then we must determine whether reversal is required. To reverse, we must be firmly convinced that the jury would have reached a different verdict had the error not occurred. This requires a de novo determination based on a review of the entire record. *State v. Williams*, 295 Kan. 506, 515-16, 286 P.3d 195 (2012).

In reviewing for clear error, we first consider whether the instruction was legally and factually appropriate, using an unlimited review of the entire record. *State v. Louis*, 305 Kan. 453, 457, 384 P.3d 1 (2016). An instruction is legally appropriate if it fairly and appropriately states the applicable law. Like all questions of law, this court employs an unlimited standard of review. To determine whether the jury instruction was factually appropriate, this court determines if there was sufficient evidence, viewed in the light most favorable to the requesting party, to support a factual basis for the instruction. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

We have reviewed the instructions given by the district judge to the jury in open court and find the aggravated kidnapping instruction given was both factually and legally appropriate. As to factual appropriateness, the judge instructed on the alternative means of taking and confining for aggravated kidnapping as charged in count two. Then the judge explained the difference between those means, stating that "[t]he defendant may be convicted or acquitted on any or all of the alternative means as charged in Count two. And your findings as to each alternative must be stated in a verdict form signed by the presiding juror." The judge then said, "When you get that verdict form, I think it'll be clear to you how it should be marked." Notably, the verdict form for aggravated kidnapping was different from the other two verdict forms, due to the alternative means

9

charged. The judge then provided further instructions regarding the aggravated kidnapping verdict form:

> "Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and the law applicable to it, uninfluenced by your decision as to any other charge.
> "The defendant may be convicted or acquitted on any or all of the offenses charged.
> "Your finding as to each crime charged must be stated in a verdict form signed by the presiding juror.
> "When you retire to the jury room . . . you will first select one of your members as a presiding juror. The person selected will preside over your deliberations, will speak for the jury in court, and will sign the verdict upon which you agree.
> "Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions.
> "Your agreement upon a verdict must be unanimous."

As can be seen, the district court's statement came during the jury instructions and dealt explicitly with the verdict form the jury was going to be required to complete. Notably, the verdict form for aggravated kidnapping was different from the other two verdict forms, due to the alternative means charged. Thus, the timing of the district court's instruction regarding the clarity of the verdict form came while instructing on a unique scenario of alternative means as well as a unique verdict form and how it was to be marked. The district judge's oral instruction reflected a hope that the unique verdict form would be clear once the jury had an opportunity to review it. When reviewing the instructions as a whole, the district court's oral instruction regarding the clarity of the aggravated kidnapping verdict form was factually appropriate.

The district court's oral instruction also was legally appropriate. The jury was required to mark the verdict forms based on a unanimous verdict as to each charge and, specifically for the aggravated kidnapping, the jury had to be unanimous on each

10

alternative means. The jury's ability to appropriately mark the verdict forms to convey a true verdict was critical. A comment by the district judge stating that he believed the verdict form to be clear is distinctly different from a comment stating that the case's verdict was clear.

The aggravated kidnapping instruction given by the district judge to the jury, including the extraneous statement made by the judge in the midst of the instruction, was both factually and legally appropriate. And even if it had not been proper, we have reviewed the entire record and are not firmly convinced the jury would have reached a different verdict had the extraneous statement not been made by the judge.

Affirmed.