NOT DESIGNATED FOR PUBLICATION

No. 125,809

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

D.H.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JASON E. GEIER, judge. Submitted without oral argument. Opinion filed October 25, 2024. Affirmed.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.

PER CURIAM: Sixteen-year-old D.H. was charged as a juvenile with aggravated robbery. After the district court granted the State's motion to prosecute him as an adult, a jury convicted him of the lesser included offense of robbery. He appeals this conviction for two reasons.

First, he argues the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution because he claims the judicial fact-findings supporting his certification for adult prosecution increased his maximum

1

punishment contrary to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Yet the Kansas Supreme Court has "consistently rejected" this argument. *State v. J.L.J.*, 318 Kan. 720, 740, 547 P.3d 501 (2024).

Second, D.H. argues the district court's failure to specifically instruct the jury on the State's burden to disprove his compulsion defense was clearly erroneous. While we find the failure to include this instruction was an error, we also find the error was harmless because, collectively, the jury instructions properly conveyed the State's burden.

We therefore affirm his conviction.

FACTUAL AND PROCEDURAL BACKGROUND

*The Robbery*

On a fall evening in October 2020, Tasha Poort and her husband Jarred, alongside their friend William Miller, were remodeling their restaurant. Tasha started her van remotely while still inside the restaurant. She then went outside and got into the driver's seat. As she was preparing to drive away, she heard a bang and noticed a handgun against the driver's side window.

Tasha saw two men outside her vehicle. Both had on COVID masks with the hoods of their sweatshirts drawn tight so only their faces were visible. One of the men opened her door and they screamed at her to get out. As they pulled her out of the van, she reached for her cell phone. While one man pointed the gun at her, the one without the gun said "'She's got her phone. Take her phone.'" He also said, "'Shoot her. Just fucking shoot her.'" And the one with the gun said, "'I'll kill you.'"

2

One of the men asked her, "'Where is the bread?'" She told them she did not have any money, then one of the men started to get into the driver's seat of her van. While he stepped into the van, Tasha turned and ran into the restaurant. As she ran, Tasha yelled out to Jarred and William that there were men in her van, and they had a gun.

After hearing Tasha, Jarred and William ran outside, and William brought his gun. One man fled from the van so Jarred chased after him and called 911. With a firearm drawn, William ordered the man in the driver's seat of the van to get on the ground. The man—who turned out to be D.H.—complied. He was arrested when police arrived.

The police conducted a cursory search, but no weapons were discovered in the van or elsewhere. Eventually Tasha's phone was found one block from the crime scene.

At first, D.H. identified himself to the police by his middle name, Amarion. But he later told them his first name. When he was interviewed while in police custody, he told police he was walking by Tasha's van and noticed it was running. He said he approached it to ask for a ride but saw it was empty. As D.H. was walking away, he said a nearby stranger called him over. D.H. said the stranger pulled out a gun and ordered D.H. to help him rob a Baskin Robbins. D.H. did not know what to do, so he went with the man.

When the men arrived at Baskin Robbins, D.H. discovered the store was locked. The other man saw a woman nearby (which turned out to be Tasha) and told D.H. that they were going to get her. The man explained to D.H. that he did not know how to drive, which meant D.H. would have to drive Tasha's van. D.H. said he followed the man because he had a gun. D.H. denied voluntarily participating in the robbery or pulling Tasha out of her van. He also said he did not know the man with the gun.

*Journal Entry to Authorize the Prosecution of D.H. as an Adult*

Before trial, the State successfully moved to prosecute D.H. as an adult. In explaining its decision at the hearing on the State's motion, the district court discussed all eight factors set forth in K.S.A. 38-2347(d) which must be considered in determining whether to prosecute a juvenile as an adult. It also told D.H.:

> "The Court is bound to follow [K.S.A.] 38-2347 which talks about prosecution as an adult. Within that statute, it talks about the State having the burden when they file a motion to prosecute an individual as an adult like you. There's eight factors, they talked about four, and they laid forth the evidence of four of those eight factors. And by a preponderance of the evidence, if those factors are met, you'll be tried as an adult. If those factors are not met, I can extend jurisdiction to be tried as a juvenile, that's how it works.
>
> "Now, I want to be very clear, this is not your trial of guilt, or innocence, this is not what this is about today. This is whether or not these factors are met. That's all this is."

*The Trial*

Before opening statements at trial, the district court told the jury, "It is your duty to presume that the defendant is not guilty of the crime charged. The law requires the State to prove the defendant is guilty beyond a reasonable doubt." The district court continued, "The burden is always on the State. The defendant is not required to prove innocence or to produce any evidence."

During the State's case, the jury heard the 911 call recording from the night of the robbery and watched video footage of the officer's interview of D.H. later that night. It also heard recordings of three telephone calls D.H. made from jail. The officer who interviewed D.H. pointed out discrepancies between D.H.'s version of events during his interview and these calls, including that in two of the calls D.H. claimed to know the other man who participated in the robbery. In one of the calls, D.H. described trying to

drive the van away while Tasha was inside the restaurant. Tasha, Jarred, and William also testified, each describing the events. D.H. presented no evidence.

The State pressed on the discrepancies in D.H.'s descriptions of the events in its closing. It also argued D.H. played an active role in the robbery, pointing out the person without the gun (who D.H. says was him) was telling the other person to shoot Tasha. The prosecutor told the jury, "The evidence shows and the evidence proves beyond a reasonable doubt that [D.H.] was a willing participant and was the main actor, I'd submit, in this crime."

In D.H.'s closing argument, defense counsel argued D.H. was compelled to participate in the robbery. He told the jury to consider the compulsion instruction, which stated:

> "Instruction number 7. Compulsion is a defense if the defendant acted under the compulsion of threat of imminent infliction of death or great bodily harm, and he reasonably believed that death or great bodily harm would be inflicted upon him or upon his parent, spouse, child, brother or sister if he did not act as he did."

Defense counsel also argued the State had not proven the elements of aggravated robbery because the facts showed the other man (not D.H.) was the one with the gun.

The jury acquitted D.H. of aggravated robbery but convicted him of the lesser included offense of robbery. The district court sentenced D.H. to 120 months in prison.

D.H. timely appeals.

*Did the district court violate D.H.'s Sixth and Fourteenth Amendment rights by not requiring the jury to find beyond a reasonable doubt that he should be prosecuted as an adult?*

A fact-finding resulting in an increase in punishment must generally be sent to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. In *Apprendi*, the United States Supreme Court noted: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

Here, D.H. argues the adult certification findings in his case violated *Apprendi*. If prosecuted as a juvenile and convicted for the same crime, D.H. would have been released from prison at age 23, since this is the maximum age for which a juvenile can be incarcerated. K.S.A. 38-2369(a)(1). Because he was prosecuted as an adult, his sentence was substantially longer. D.H. argues that since the district court did not submit the adult certification question to the jury to find beyond a reasonable doubt that D.H. should be prosecuted as an adult, it violated his constitutional rights under the Sixth and Fourteenth Amendments based on *Apprendi*.

*D.H. raises the* Apprendi *issue for the first time on appeal.*

Before considering whether the district court's findings violated *Apprendi*, we consider whether the issue has been preserved for appeal. Generally, issues not raised to the district court cannot be raised on appeal. See *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). And more specifically, "constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review." *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021).

The Kansas Supreme Court, however, recognizes some limited exceptions. These exceptions permit parties to raise a constitutional issue even for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). The exceptions are:

> "(1) the newly asserted theory involves 'only a question of law arising on proved or admitted facts and the issue is finally determinative of the case'; (2) 'resolution of the question is necessary to serve the ends of justice or to prevent denial of fundamental rights'; and (3) the district court reached the right result for the wrong reason." 309 Kan. at 995 (quoting *Trotter v. State*, 288 Kan. 112, 124-25, 200 P.3d 1236 [2009]).

D.H. argues the first two exceptions apply because D.H.'s *Apprendi*-based challenge presents a question of law and potentially deprives D.H. of fundamental rights under the United States Constitution. To support his point on the application of the first exception, D.H. relies on *State v. Tyler*, 286 Kan. 1087, 191 P.3d 306 (2008). In *Tyler*, the Kansas Supreme Court found the same challenge D.H. makes—whether a district court's factual findings to support its decision to authorize adult prosecution increases a defendant's potential punishment in violation of *Apprendi*—"raises a question of law." *Tyler*, 286 Kan. at 1096. We agree and exercise our discretion to consider D.H.'s arguments.

### *The Kansas Supreme Court has consistently rejected the same arguments D.H. makes here.*

To begin, we note D.H. does not challenge the basis for the district court's certification that he should be prosecuted as an adult. Instead, he argues the jury and not the district court should be the one to make that decision. But the Kansas Supreme Court has "consistently rejected the claim that judicial fact-findings made in support of an adult-certification order violate *Apprendi*" because adult certification is a jurisdictional question meant to determine which court resolves the case. *J.L.J.*, 318 Kan. at 740; see *State v. Potts*, 304 Kan. 687, 705, 374 P.3d 639 (2016). D.H. fails to persuade us that we can or should move away from this precedent.

D.H. mainly relies on *In re L.M.*, 286 Kan. 460, 470, 186 P.3d 164 (2008), a Kansas Supreme Court case recognizing juveniles have a constitutional right to a jury trial under the Sixth and Fourteenth Amendments. He argues *In re L.M.* recognized that, due to legislative changes, procedural safeguards in the juvenile system had been removed and now juveniles are treated similar to adults. He argues previous Kansas cases which found adult certification findings did not violate *Apprendi* (like *Tyler* and *State v. Jones*, 273 Kan. 756, 47 P.3d 783 [2002]) are now outdated and wrong because those decisions were based on the procedural safeguards for juveniles which *In re L.M* found no longer exist.

But D.H. misreads *Jones* and *Tyler* and misapplies *Apprendi*. *Jones* found *Apprendi* did not demand a jury to determine whether a juvenile can be prosecuted as an adult, in part, because there were procedural safeguards differentiating the juvenile system from the adult system at the time. *Jones*, 273 Kan. at 774. But in reaching this decision, the Kansas Supreme Court also relied on our court's decision in *State v. Hartpence*, 30 Kan. App. 2d 486, Syl. ¶ 4, 42 P.3d 1197 (2002), where we "classified *Apprendi* as dealing with the sentencing phase of a prosecution, while the K.S.A. 38-1636 procedure is a jurisdictional matter where the decision is made which court will resolve the case." *Jones*, 273 Kan. at 775. And in *Tyler*, the court sidestepped the policy arguments mentioned in *Jones* (the ones D.H. claims are now outdated) and instead relied on this alternative basis, noting *Apprendi*'s sentencing "constraint would still apply after the certification procedure sends the juvenile to adult court." *Tyler*, 286 Kan. at 1096.

The Kansas Supreme Court revisited this issue in *Potts*. There, it noted that *Apprendi* "cautioned that 'the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that *authorized by the jury's guilty verdict*?'" *Potts*, 304 Kan. at 707. It then pointed out that "the adult certification procedure takes place before a juvenile has been found guilty of committing any crime" and "[s]ince *Apprendi*, the [United States Supreme] Court has never indicated

or hinted that *Apprendi* would apply to a factual determination made at a pretrial proceeding." *Potts*, 304 Kan. at 707.

D.H. argues the certification process involves both a jurisdictional and a sentencing question because the determination "directly affects the maximum punishment." He relies on a post hoc argument to support this position. He claims because he received a longer sentence for his crime after being certified as an adult, this means the certification must have impacted his sentencing. But D.H. inflates the correlation between these two events and overstates *Apprendi*'s holding.

The Kansas Supreme Court addressed D.H.'s argument in *State v. Mays*, 277 Kan. 359, 367-68, 85 P.3d 1208 (2004), pointing out that adult certification does not determine whether the defendant is guilty or innocent—it determines which system the defendant is tried in. According to D.H., "[t]he finding of the facts supporting the certification of the child to an adult increases the punishment that child *is facing*." (Emphasis added.) But he overgeneralizes the issue. The district court's findings did not enhance D.H.'s sentence, it simply allowed for his prosecution as an adult. While the adult certification may have opened D.H.'s *opportunity* for more punishment, the simple act of certifying a juvenile as an adult does not render a verdict or attach a sentence. A jury must still find the defendant is guilty before any punishment is imposed. See 277 Kan. at 367-68. And if a guilty verdict is rendered, the district court is still constrained to sentence within the proscribed statutory maximum set forth in the Kansas Sentencing Guidelines. D.H.'s sentence was based on the jury's verdict—not the district court's certification.

In sum, the Kansas Supreme Court has clearly and unambiguously stated its position rejecting claims that judicial fact-finding made in support of adult certification violates *Apprendi*. And D.H. has cited no persuasive evidence to suggest the Kansas Supreme Court will abrogate its position. In fact, as mentioned earlier, the Kansas Supreme Court reaffirmed its decision on this issue in May 2024, again unambiguously

9

rejecting arguments like D.H.'s argument that adult certification violates *Apprendi*. See *J.L.J.*, 318 Kan. at 740. D.H.'s punishment was increased because of the system he was placed in—not because of the district court's factual findings.

The district court's factual findings to support its decision to prosecute D.H. as an adult did not violate *Apprendi*. Thus, we affirm D.H.'s certification for adult prosecution.

*Did the district court commit a clear error by failing to instruct the jury that the State needed to disprove D.H.'s affirmative defense of compulsion beyond a reasonable doubt?*

D.H. relied on the affirmative defense of compulsion at trial. The jury was given an instruction on this defense based on PIK Crim. 4th 52.080 (2021 Supp.):

> "Instruction number 7. Compulsion is a defense if the defendant acted under the compulsion of threat of imminent infliction of death or great bodily harm, and he reasonably believed that death or great bodily harm would be inflicted upon him or upon his parent, spouse, child, brother or sister if he did not act as he did."

D.H. contends that because the "Notes on Use" section in the PIK Crim. 4th 52.080 instruction states that when this instruction is given, the burden of proof instruction set out in PIK Crim. 4th 51.050 "should be given," the district court erred by not giving the jury both instructions. PIK Crim. 4th 51.050 (2020 Supp.) Defenses—Burden of Proof. If the district court followed the Notes on Use, it would have instructed the jury in line with PIK Crim. 4th 51.050, which reads in part:

> "The defendant raises *describe the defense claimed* as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State has the burden to disprove this defense beyond a reasonable doubt. The State's burden of proof does not shift to the defendant." PIK Crim. 4th 51.050.

Instead, the district court told the jury of the general burden of proof to find D.H. guilty:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty. The test you must use in determining whether the defendant is guilty or not guilty is this. If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty.

"It is for you to determine the weight and credit to be given the testimony of each witness. You have the right to use common knowledge and experience in regard to the matter about which a witness has testified.

"A defendant in a criminal trial has a constitutional right not to be compelled to testify. You must not draw any inference of guilt from the fact that the defendant did not testify. And you must not consider this fact in arriving at your verdict."

Then, after instructing on the aggravated robbery charge, the district court instructed the jury on the elements of the lesser offense of robbery:

"Instruction number 5. If you do not agree that the defendant is guilty of aggravated robbery, you should then consider the lesser included offense of robbery. To establish this charge, each of the following claims must be proved: (1) The defendant knowingly took property from the person or presence of Tasha Poort; (2) The taking was done by force or threat of bodily harm to Tasha Poort; (3) This act occurred on or about the 25th day of October, 2020, in Shawnee County, Kansas.

"The State must prove that the defendant acted—pardon me. The State must prove that the defendant committed the crime knowingly. A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about, or the circumstances in which he was acting, or that his conduct was reasonably certain to cause the result complained about by the State."

11

D.H. claims the district court did not provide sufficient guidance to the jury on the law and this error likely affected the jury's verdict.

*Standard of Review*

Here, there appears no dispute about whether the district court erred in failing to give the additional instruction. But what is in dispute is whether the district court's omission of the instruction affected the verdict. See *State v. Buck-Schrag*, 312 Kan. 540, 551, 477 P.3d 1013 (2020).

Because D.H. did not request that the PIK Crim. 4th 51.050 instruction be given at trial, we examine whether the district court's error was "clearly erroneous." K.S.A. 22-3414(3); *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). In making this determination, we must review the impact of the omitted instruction in light of the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. See *State v. Trotter*, No. 120,158, 2022 WL 2112212, at *5 (Kan. App. 2022) (unpublished opinion). In *Trotter*, we noted that "[o]mitting a jury instruction is clearly erroneous when "'the reviewing court is firmly convinced that there is a real possibility the jury would have returned a different verdict if the instruction had been given.'"" 2022 WL 2112212, at *5. This is the defendant's burden to establish, and we make a de novo determination based on the entire record as to whether the defendant met the burden. *State v. Bentley*, 317 Kan. 222, 242, 526 P.3d 1060 (2023).

*Overall, the PIK instructions given by the district court appropriately told the jury of the legal requirements for the defense and the State's standard of proof.*

In cases where the defendant specifically argues an affirmative defense instruction fails to reflect the law, this court should ask: "[D]id the standard PIK instruction appropriately inform the jury of applicable legal requirements, or did the law require additional and more explicit language?" *Buck-Schrag*, 312 Kan. at 551. The focus of the

analysis is whether the lack of an instruction interfered with the instructions as a whole and nature of the evidence. 312 Kan. at 553.

D.H. argues the omission of the PIK Crim. 4th 51.050 instruction means the jury did not understand what to do. In other words, he says the jury "likely assumed" D.H. had the burden to prove his compulsion defense rather than understanding the State had the burden to disprove his defense beyond a reasonable doubt. He relies on Judge Atcheson's concurrence in *State v. Staten*, No. 108,305, 2015 WL 423644 (Kan. App. 2015) (unpublished opinion) (*Staten I*), to support his position. In his concurrence, Judge Atcheson argued the omission of the PIK Crim. 4th 51.050 instruction meant the jury had no guidance: (1) on the level of proof to establish the affirmative defense, and (2) who had the burden of proof on the affirmative defense. 2015 WL 423644, at *22-23 (Atcheson, J., concurring).

While Judge Atcheson explains how the omission of this instruction could have confused the jury in *Staten I*, he acknowledges controlling legal authority which found language in other instructions ameliorated the confusion by providing some guidance on the issue. 2015 WL 423644, at *25-26 (Atcheson, J., concurring) (noting *State v. Cooperwood*, 282 Kan. 572, 580-82, 147 P.3d 125 [2006]); *State v. Crabtree*, 248 Kan. 33, 39-40, 805 P.2d 1 [1991]). And because the general language of the PIK Crim. 4th 51.050 instruction alone does not offer a comprehensive overview of what the State needed to prove, it must be integrated with the other instructions describing the State's obligation to prove the defendant's guilt. See *Staten I*, 2015 WL 423644, at *24 (Atcheson, J., concurring). He also noted that in both *Cooperwood* and *Crabtree*, the Kansas Supreme Court found the omission of the PIK Crim. 4th 51.050 instruction was not clear error, based on the language of other jury instructions which were given. *Staten I*, 2015 WL 423644, at *25-26 (Atcheson, J., concurring). But D.H. ignores this part of Judge Atcheson's concurrence and focuses only on how the omission might have

caused confusion. He does not address whether the other instructions cured or at least diminished that confusion.

D.H.'s argument is also not as nuanced as the one Judge Atcheson makes in *Staten I.* Like the defendant in *Trotter*, D.H. simply argues the omission of the PIK Crim. 4th 51.050 instruction was clear error because there is a real possibility the jury could have reached a different verdict. But as we noted in *Trotter*, Judge Atcheson's argument in his *Staten I* concurrence was more complex, extending into whether the affirmative defense of self-defense should be treated as an element of the charged offense. *Trotter*, 2022 WL 2112212, at *9. D.H. does not make a similar argument about the compulsion defense and, as we noted in *Trotter*, the Kansas Supreme Court "explained that omitting the instruction on the burden of proof for self-defense is not the functional equivalent of omitting an element of the charged offense" and reaffirmed the clear error test as set forth in *Crabtree* and *Cooperwood*. 2022 WL 2112212, at *9 (citing *State v. Staten*, 304 Kan. 957, 966-67, 377 P.3d 427 [2016] [*Staten II*]). Thus, when there is an error, like in *Cooperwood*, *Crabtree*, and *Staten II*, the Kansas Supreme Court returns to considering the jury instructions as a whole as well as the nature of the evidence supporting the affirmative defense. *Staten II*, 304 Kan. at 967.

In both *Cooperwood* and *Crabtree*, the Kansas Supreme Court found that, while failing to provide the additional instruction may be an error, the language in the other instructions minimized the impact of that error. Because "'[a]lthough PIK Crim. 2d 52.02 does not specifically address the burden of proof when an affirmative defense is asserted, it does state the general rule that the State has the burden; the defendant never has to prove himself not guilty.'" *Cooperwood*, 282 Kan. at 581 (quoting *Crabtree*, 248 Kan. at 40). D.H.'s jury received those same general burden of proof instructions. And as also noted in *Cooperwood* and *Crabtree*, the jury was instructed on D.H.'s presumption of innocence as well. *Cooperwood*, 282 Kan. at 582.

14

While using the exact statutory language or following the PIK Crim. 4th 52.080 Notes on Use might provide more clarity for the jury on the prosecutor's burden, such precision is not always necessary. See *Buck-Schrag*, 312 Kan. at 553. The use of PIK instructions is highly recommended—but not mandatory. Thus, failing to provide the additional instruction alone does not automatically show the failure significantly impacted the defendant. See 312 Kan. at 552.

Here, D.H. requested the compulsion instruction, but not the omitted instruction. This means the omitted instruction should not be reviewed in isolation, but in light of the trial as a whole. 312 Kan. at 553. This means also looking at counsel's arguments and the evidence presented. *Trotter*, 2022 WL 2112212, at *5; see also *Cooperwood*, 282 Kan. at 581 (noting "only a 'bare scintilla of evidence' justified the self-defense instruction").

When viewing all the instructions given and relevant caselaw, we are not firmly convinced the jury trial would have ended in a different result if the district court provided another, more specific instruction about how the prosecution must disprove D.H.'s affirmative defense beyond a reasonable doubt. As the State persuasively points out, the district court instructed the jury on: the State's burden to prove D.H.'s guilt beyond a reasonable doubt, the elements of robbery, the lesser included offense of robbery, and D.H.'s compulsion defense. Perhaps even more persuasively, the State points out the district court instructed the jury that D.H. need not prove he was not guilty. Thus, as a whole the law was accurately stated.

The State also mentions how the prosecutor even reminded the jury, "The evidence shows and the evidence proves beyond a reasonable doubt that [D.H.] was a willing participant and was the main actor, I'd submit, in this crime." Plus, the State points out the prosecutor argued the evidence showed beyond a reasonable doubt D.H. was armed with a dangerous weapon on the night of the incident. And D.H.'s counsel also reminded the jury of the State's burden to prove guilt beyond a reasonable doubt.

In examining the evidence, while D.H. claimed he did not willingly participate in the robbery, he provided different versions of what happened to police and in his jail calls. Tasha also testified about his active participation, including how he instructed the other man to take her phone and shoot her. And in another jail call, when D.H. was asked what happened, he said, "I'll tell you . . . what I told the police."

Considering the other instructions, counsel's arguments, and the evidence undercutting D.H.'s affirmative defense, we do not find the court's error was clearly erroneous. We therefore affirm D.H.'s conviction.

Affirmed.